AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

OCT 0 1 2019



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

|  |  |
|---|---|
| In the Matter of the Search of: | ) |
| | ) |
| Three electronic devices seized on September 17, | ) |
| 2018, and processed into evidence in connection | )   Case No. 2: 1 9 - SW   8 4 4 ——— DB |
| with DEA File No. R7-17-0054, as further | ) |
| described in Attachment A. | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 1)   21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute and possess with intent to distribute controlled substances. |
| 2)   21 U.S.C. § 844(a)(1) | Distribution of and possession with intent to distribute controlled substances. |

The application is based on these facts:

**See Affidavit of DEA Special Agent Amie J. Anderson, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of ___30___ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Amie J. Anderson, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____September 30, 2019_____

_____
*Judge's signature*

City and state:   _____Sacramento, California_____

Hon. Deborah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Amie J. Anderson, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., the three electronic devices further described in Attachment A) which is currently in law enforcement's possession, and the extraction from that property of the electronically stored information within (i.e., the data and information described in Attachment B).

2. I am a Special Agent with the United States Drug Enforcement Administration (DEA), and have been since September 2007. I graduated from the DEA Basic Agent Academy at Quantico, Virginia. I have received specialized training in narcotic (including marijuana) investigation matters including, but not limited to, drug identification, drug interdiction, drug detection, money laundering techniques and schemes, and asset identification and removal.

3. I have assisted in the execution of numerous search warrants to search particular places or premises for controlled substances (including crystal methamphetamine) and related paraphernalia, indicia, and other evidence of violations of federal controlled substances statutes, including 21 U.S.C. §§ 841, 844, and 846. As a result, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and communication methods utilized by traffickers in their efforts to import, conceal, manufacture, and distribute controlled substances, including methamphetamine. Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain.

4. I have been actively involved as a case agent in numerous investigations and have talked with confidential informants involved in the trafficking of narcotics. I have become familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations. I have served as a monitor during state and federal wire-tap investigations, and I am familiar with many of the means and methods used by drug traffickers to purchase, transport, store, and distribute drugs, and to hide the profits generated from such transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

/ / /

1

5.      I am a "Federal law enforcement officer" as defined in Rule 41(a)(2)(C) of the Federal
        Rules of Criminal Procedure, that is, a government agent engaged in enforcing federal
        criminal laws and authorized to request search and arrest warrants.

6.      The information contained in this Affidavit is based on my review of the reports and files
        in this case, conversations with other law enforcement personnel, and my own personal
        knowledge.

7.      Because this affidavit is intended to show only that there is sufficient probable cause for the
        requested warrant, it does not detail all of my knowledge about this investigation; only that
        which I believe to be pertinent to the authority requested to search the electronic devices
        described below.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The property to be searched consists of the three cellular telephones described below ("the
        Devices"):

        a.      One black LG cellular telephone, Model # LS777, and identified by serial
                number 803VTVR1036663.  This device was seized from the person of
                Maria CERVANTES-ECHEVARRIA during her arrest on September 17,
                2018, in Red Bluff, California.  This device was processed into evidence on
                that day in connection with DEA File No. R7-17-0054, and logged as
                Exhibit N-25.

        b.      One black ZTE cellular telephone, Model # Z232TL, and identified by IMEI
                number 861961031221709.  This device was seized from the vehicle Maria
                CERVANTES-ECHEVARRIA was driving on September 17, 2018, just
                before her arrest in Red Bluff, California.  This device was processed into
                evidence on that day in connection with DEA File No. R7-17-0054, and
                logged as Exhibit N-36.

        c.      One black LG cellular telephone, Model # LG-B470, and identified by IMEI
                number 359926-08-171747-5.  This device was seized from the person of
                Miguel CERVANTES at the time of his arrest on September 17, 2018, in
                Red Bluff, California.  This device was processed into evidence on that day
                in connection with DEA File No. R7-17-0054, and logged as Exhibit N-24.

9.      All three devices were processed into evidence on September 17, 2018, in connection with
        DEA File No. R7-17-0054, and have been in DEA's custody continuously since the time
        they were seized.

10.     The applied-for warrant would authorize the forensic examination of the Devices for the
        purpose of identifying electronically-stored data particularly described in Attachment B.

## RELEVANT JUDICIAL ACTIVITY IN THE EASTERN DISTRICT OF CALIFORNIA

11.     This case arises from a methamphetamine-trafficking operation that defendants Miguel CERVANTES, Maria CERVANTES-ECHEVARRIA, and Marta JIMINEZ-LOPEZ were involved in throughout 2017 and 2018, in Tehama County, California.

12.     On September 18, 2018, based on the facts set forth below, DEA Special Agent Dennis F. Hale presented a criminal complaint and set of arrest warrants to the Hon. Carolyn Delaney, United States Magistrate Judge, Eastern District of California. The complaint charged CERVANTES, CERVANTES-ECHEVARRIA, and JIMINEZ-LOPEZ with one count of conspiracy to distribute and to possess with intent to distribute at least 500 grams of meth-amphetamine, in violation of 21 U.S.C. §§ 844(a)(1) and 846, and one count of distribution of and possession with intent to distribute at least 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Judge Delaney signed the complaint and arrest warrants on that day. *See United States v. Miguel Alvarez Cervantes, et al.*, 2:18-mj-0178-CKD (E.D. Cal.).

13.     On September 27, 2018, a grand jury for the Eastern District of California returned an eight-count indictment against the three defendants, charging them with various narcotics- and firearms-related offenses. *See United States v. Miguel Alvarez Cervantes, et al.*, 2:18-cr-0196-GEB (E.D. Cal.).

## PROBABLE CAUSE

14.     The United States government, including the U.S. Drug Enforcement Administration, the Federal Bureau of Investigation, and the Bureau of Land Management (the "Investigating Agencies") are investigating Miguel Alvarez CERVANTES, Maria Eugena CERVANTES-ECHEVARRIA, and Marta JIMINEZ-LOPEZ for violations of 21 U.S.C. §§ 841(a)(1) and 846 (distribution of and possession with intent to distribute controlled substances, and conspiracy to do the same).

15.     This investigation began in September 2017, based on narcotics trafficking that was then believed to be taking place in Redding, California. Afterwards, Investigating Agencies gathered evidence through an undercover agent and physical and electronic surveillance, confirming that Miguel CERVANTES, Maria CERVANTES-ECHEVARRIA, and Marta JIMINEZ-LOPEZ (the Target Subjects) were trafficking methamphetamine in and around Tehama County, in the Eastern District of California.

16.     During the initial part of the investigation, agents identified the property located at 25325 Lincoln Street in Los Molinos, California, as a stash house used by the Target Subjects to store controlled substances. A records check for the property showed it to be a 5.5-acre parcel owned by Jason and Anna Abel. The DEA does not believe the Abel family was involved with the Target Subjects' drug-trafficking activities.

/ / /

3

17.    During the investigation, agents determined that Maria CERVANTES-ECHEVARRIA and
       Marta JIMIEZ-LOPEZ used the house and property at 25325 Lincoln Street as their
       primary residence. Maria CERVANTES-ECHEVARRIA is Miguel CERVANTES'
       daughter.

18.    The first instance of narcotics trafficking that originated at 25325 Lincoln Street took place
       on January 23, 2018. On that date, agents saw Maria CERVANTES-ECHEVARRIA roll a
       tire from a shed on the property and put it into the back of her car with Marta JIMINEZ-
       LOPEZ's help. Once the tire was in the car, CERVANTES-ECHEVARRIA and
       JIMINEZ-LOPEZ drove to a secondary location where they met Weslee BROOKS. Once
       there, the two women gave BROOKS the tire. BROOKS left moments later, followed by
       surveillance units. Officers made a traffic stop on BROOKSs' car and a later search of that
       car resulted in the seizure of over ten kilograms of methamphetamine hidden inside the tire.

19.    After that, the Investigating Agencies successfully introduced an undercover agent (UC) to
       CERVANTES, and in the months following, law enforcement (through the UC) purchased
       about 52 ounces (1,474 grams) of methamphetamine from CERVANTES during three
       controlled buys.

20.    The first controlled buy took place on August 8, 2018, and culminated with the UC buying
       about four ounces of methamphetamine from CERVANTES for $760. CERVANTES and
       the UC had communicated with their cellular phones beginning on August 2, during which
       the UC asked about the price for four ounces of methamphetamine. CERVANTES told the
       UC that four ounces would cost $760. Then, on August 7, CERVANTES and the UC
       communicated once more, at which time the UC asked again if four ounces would cost
       $760, and CERVANTES agreed. The UC told CERVANTES he would be in Red Bluff the
       following day.

21.    On August 8, the UC spoke to CERVANTES by cellular phone and the two men agreed on
       a meeting time and location for later in the day. During this conversation, CERVANTES
       told the UC he did not have the methamphetamine with him and that he had to pick it up.
       Then, at the set time and location (a gas station in Red Bluff), CERVANTES arrived and
       met the UC. During this meeting, CERVANTES sold the UC four ounces of metham-
       phetamine for $760.

22.    The second controlled buy took place on August 24, 2018, and resulted in the UC buying
       about one pound of methamphetamine for $3,000. For this buy, the UC began
       communicating via cell phone with CERVANTES on August 17. During the August 17
       conversation, the UC asked CERVANTES if he could provide one pound of crystal
       methamphetamine, and CERVANTES agreed. The UC communicated with CERVANTES
       again on August 20, and asked CERVANTES how much one pound of methamphetamine
       would cost, and CERVANTES confirmed that it would cost $3,000.

23.    On August 24, the UC contacted CERVANTES and told him he would be in town that
       afternoon. CERVANTES and the UC agreed on a meeting time and place. About 30
       minutes prior to the meeting, CERVANTES was seen arriving at 25325 Lincoln Street

4

(CERVANTES-ECHEVARRIA and LOPEZ's home).  Once there, he walked into a storage shed approximately 30 feet south of the residence.  He remained in the shed for about one minute before leaving the property.  At the designated time, CERVANTES arrived and met the UC and sold him one pound of methamphetamine for $3,000.

24.    The third (and final) controlled buy took place on September 17, 2018, and resulted in the UC buying about two pounds of methamphetamine from CERVANTES for $6,000.  For this buy, the UC began coordinating with CERVANTES by cell phone on September 14.  During that call, the UC told CERVANTES he would be in town the following week.  CERVANTES agreed to meet with the UC when he was in the area.  Then, on September 17, the UC communicated with CERVANTES again.  During the exchange, CERVANTES asked the UC how much he wanted to buy, and the UC said that he didn't want to purchase anything, but only wanted to meet to be introduced to the heroin source of supply that CERVANTES had mentioned earlier.  CERVANTES agreed.

25.    At the designated time, CERVANTES arrived and met the UC.  During the meeting, the UC told CERVANTES he wanted to buy two pounds of methamphetamine.  CERVANTES called CERVANTES-ECHEVARRIA and asked her to bring the methamphetamine to him.

26.    Surveillance units that were on site at 25325 Lincoln Street watched as CERVANTES-ECHEVARRIA went from the home to one of the sheds on the property, after which she left with JIMINEZ-LOPEZ.  CERVANTES-ECHEVARRIA and JIMINEZ-LOPEZ arrived at the meeting location shortly afterwards.  Once there, CERVANTES-ECHEVARRIA got out of her car and carried a small black paper bag as she approached CERVANTES.  She showed the UC the bag's contents, and the UC saw that it was filled with two Ziploc bags, both of which contained crystal methamphetamine.  The UC gave CERVANTES $6,200 for the methamphetamine.  As CERVANTES counted the money, he was taken into custody by law enforcement.  CERVANTES-ECHEVARRIA and JIMINEZ-LOPEZ were also arrested at that time.

27.    A search of CERVANTES-ECHEVARRIA revealed a cellular phone (Exhibit N-25) in the front left pocket of her shirt.  A second cellular phone (Exhibit N-36) was found in the car CERVANTES-ECHEVARRIA was driving when she arrived at the meeting location.  A third cellular phone (Exhibit N-36) was found on Miguel CERVANTES's person at the time of his arrest.  All three cell phones were processed into evidence on September 17, 2018, in connection with this investigation (DEA File No. R7-17-0054).

28.    Afterwards, agents executed a search warrant at 25325 Lincoln Street and seized roughly 30 pounds of crystal methamphetamine; 2 bricks of heroin (approximately 3.5 pounds); 1 AR-15-style .223 caliber rifle; 2 Smith & Wesson revolvers (loaded); 1 Sig Sauer pistol (loaded); and over $30,000 in cash.

/ / /

/ / /

# # # #

29.  Based on my training and experience, and from what I have learned by consulting other
     agents, I know that mobile telephones and/or SIM cards:

     •   preserve in their memory a history of incoming, outgoing, and missed calls;
     •   contain in their memory a telephone book, which allows the user to store numbers
         and other contact information;
     •   contain in their memory text messages sent, received, and drafted by the user;
     •   have a voicemail function that allows callers to leave messages when the user does
         not answer;
     •   contain other user-entered files such as "to-do" lists, which can provide evidence of
         a crime;
     •   contain photographic data files, which can be evidence of criminal activity when the
         user took pictures of evidence of crime.

30.  In addition to these functions, I also know that SIM cards are "smart cards" inside mobile
     telephones, carrying unique identification numbers, which are capable of storing personal
     data and preventing operation if removed.

31.  Mobile telephone companies also store the data described in the above-paragraphs on their
     own servers and associate the data with particular users' mobile telephones.  In addition, all
     of these functions are can be found on a "smart" phone or similar handheld device (such as
     the devices in Attachment A), as well as evidence of email communications.

32.  Because there is probable cause to believe CERVANTES, CERVANTES-ECHEVARRIA,
     and JIMINEZ-LOPEZ possessed the methamphetamine seized on September 17, 2018 with
     the intent to distribute it, and conspired to do the same, in violation of 21 U.S.C. §§
     841(a)(1) and 846, I submit there is also probable cause to believe that information and
     records relating to these activities will be found stored in the Devices seized and processed
     into evidence on that date, and in particular, will contain evidence of the types described in
     Attachment B.

33.  Based on my training and experience as a DEA Special Agent, I know that drug traffickers
     frequently use cell phones to facilitate their narcotics-trafficking activities.  Specifically,
     cell phones are used to call and text suppliers, customers, associates, and partners to
     facilitate the purchase, packaging, transportation, and sale of illicit substances.  Address
     books and contact lists often include the names, monikers, and contact information for
     individuals and businesses that are involved in criminal activity.  Furthermore, cellular
     phones are equipped with digital cameras, and therefore often contain photographs and
     videos taken by individuals involved in drug trafficking, including "trophy" photographs of

contraband, to include narcotics, cash, firearms, and other photographs of associates and business partners.

34.     I also know that people who traffic in narcotics usually negotiate or discuss the particulars of their transactions, to include the price, the volume of drugs involve, and the meeting location, in advance of any transaction. Moreover, it has been my experience that these negotiations and discussions most frequently take place by way of phones, emails, and/or text messages. I know that cellular telephones are commonly referred to as tools of the drug trade.

35.     Given my training and experience, I also believe that, based on the extraordinary amount of controlled substances recovered in this case—over 30 pounds of methamphetamine and 3.5 pounds of heroin—I would expect that CERVANTES and CERVANTES-ECHEVARRIA would have used their cellular phones at some point in the days or weeks before September 17, 2018, to negotiate or discuss the details of the transaction from whomever supplied the drugs to them.

36.     The devices listed in Attachment A are currently maintained at the DEA's Sacramento Division Office in Sacramento, California. The devices have been in law enforcement's custody since they were seized in September 2018. Based on my training and experience, I know the devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into law enforcement's possession.

## TECHNICAL TERMS

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

38.     <u>Wireless telephone</u>: A wireless telephone (or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones

may also include global positioning system ("GPS") technology for determining the location of the device.

39.     PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and using computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

40.     Based on my training, experience, and research, I know that the devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, internet access device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who they communicated with, and the content of those communications.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

41.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

42.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

43.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

/ / /

8

44.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution'" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

45.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

46.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

47.     Nature of examination.  Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

48.     Manner of execution.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9

## CONCLUSION

49.    Based on the foregoing, I submit that this Affidavit supports probable cause for a search
       warrant authorizing the forensic examination of the devices described in Attachment A, to
       seek the items described in Attachment B.

50.    I declare under penalty of perjury that the statements above are true and correct to the best
       of my knowledge and belief.

Amie J. Anderson
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me on September 30, 2019.

Hon. Deborah L. Barnes
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

## ATTACHMENT A

Description:

The devices to be searched are as follows:

a.  One black LG cellular telephone, Model # LS777, and identified by serial number
    803VTVR1036663.  This device was seized from the person of Maria
    CERVANTES-ECHEVARRIA during her arrest on September 17, 2018, in Red
    Bluff, California.  This device was processed into evidence on that day in
    connection with DEA File No. R7-17-0054, and logged as Exhibit N-25.

b.  One black ZTE cellular telephone, Model # Z232TL, and identified by IMEI
    number 861961031221709.  This device was seized from the vehicle Maria
    CERVANTES-ECHEVARRIA was driving on September 17, 2018, just before her
    arrest in Red Bluff, California.  This device was processed into evidence on that day
    in connection with DEA File No. R7-17-0054, and logged as Exhibit N-36.

c.  One black LG cellular telephone, Model # LG-B470, and identified by IMEI
    number 359926-08-171747-5.  This device was seized from the person of Miguel
    CERVANTES at the time of his arrest on September 17, 2018, in Red Bluff,
    California.  This device was processed into evidence on that day in connection with
    DEA File No. R7-17-0054, and logged as Exhibit N-24.

## **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846, and involve Miguel Alvarez CERVANTES, Maria Eugena CERVANTES-ECHEVARRIA, and Marta JIMINEZ-LOPEZ, their co-conspirators and associates, including:

      a.      All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

            i.      Call history (incoming, outgoing, and missed calls);
            ii.      Text messaging history (incoming, outgoing, and drafts);
            iii.      Telephone book (a/k/a "contacts list");
            iv.      Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
            v.      Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
            vi.      Voicemail;
            vii.      Photo gallery;
            viii.      User-entered messages (i.e., to-do lists); and
            ix.      Any passwords used to access the electronic data described above.

      b.      Information that may identify criminal co-conspirators, associates, or potential victims, including email addresses, phone numbers, IP addresses, names or contact/ profile information in the Phone Book or Contacts function.

      c.      Information related to sources of instruments of the criminal act such as invoices, receipts, and emails from online retailers.

      d.      Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices.

      e.      Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | |
| Three electronic devices seized on September 17, 2018, ) | Case No. 2:19-SW 844 ——— DB |
| and processed into evidence in connection with DEA File ) | |
| No. R7-17-0054, as further described in Attachment A. ) | |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___EASTERN___ District of ___CALIFORNIA___
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See Attachment B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ___October 14, 2019___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for   30   days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   *9-30-19 @ 4:05*                    _____
                                                                                      *Judge's signature*

City and state:      Sacramento, California            Hon. Deborah L. Barnes, U.S. Magistrate Judge
                                                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                      Date

**ATTACHMENT A**

Description:

The devices to be searched are as follows:

a.    One black LG cellular telephone, Model # LS777, and identified by serial number 803VTVR1036663.  This device was seized from the person of Maria CERVANTES-ECHEVARRIA during her arrest on September 17, 2018, in Red Bluff, California.  This device was processed into evidence on that day in connection with DEA File No. R7-17-0054, and logged as Exhibit N-25.

b.    One black ZTE cellular telephone, Model # Z232TL, and identified by IMEI number 861961031221709.  This device was seized from the vehicle Maria CERVANTES-ECHEVARRIA was driving on September 17, 2018, just before her arrest in Red Bluff, California.  This device was processed into evidence on that day in connection with DEA File No. R7-17-0054, and logged as Exhibit N-36.

c.    One black LG cellular telephone, Model # LG-B470, and identified by IMEI number 359926-08-171747-5.  This device was seized from the person of Miguel CERVANTES at the time of his arrest on September 17, 2018, in Red Bluff, California.  This device was processed into evidence on that day in connection with DEA File No. R7-17-0054, and logged as Exhibit N-24.

## **ATTACHMENT B**

1.    All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846, and involve Miguel Alvarez CERVANTES, Maria Eugena CERVANTES-ECHEVARRIA, and Marta JIMINEZ-LOPEZ, their co-conspirators and associates, including:

   a.    All names, words, telephone numbers, email addresses, time/date information, messages or electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone and described as:

   i.    Call history (incoming, outgoing, and missed calls);
   ii.    Text messaging history (incoming, outgoing, and drafts);
   iii.    Telephone book (a/k/a "contacts list");
   iv.    Data screen, file, or writing identifying the telephone number associated with the mobile telephone searched;
   v.    Data screen, file, or writing containing serial numbers or other information to identify the mobile phone searched;
   vi.    Voicemail;
   vii.    Photo gallery;
   viii.    User-entered messages (i.e., to-do lists); and
   ix.    Any passwords used to access the electronic data described above.

   b.    Information that may identify criminal co-conspirators, associates, or potential victims, including email addresses, phone numbers, IP addresses, names or contact/ profile information in the Phone Book or Contacts function.

   c.    Information related to sources of instruments of the criminal act such as invoices, receipts, and emails from online retailers.

   d.    Any information related to schedules and travel, including geolocation data and GPS coordinates stored on the Devices.

   e.    Any information related to bank records, checks, credit card bills, account information, or other financial records.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# # # #

12